IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF WYOMING

FILED

11:55 am, 6/12/17

Tim J. Ellis
Clerk of Court

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| ROBERT ALYN RAEL | ) | Case No. 08-20251 |
| LISA LYNN RAEL | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| UNITED STATES TRUSTEE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 15-2013 |
| | ) | |
| ROBERT ALYN RAEL | ) | |
| LISA LYNN RAEL | ) | |
| | ) | |
| Defendants. | ) | |

## **OPINION**

This adversary proceeding came before the court for an evidentiary hearing on February 21, 2017, on the United States Trustee's Complaint to Deny Debtors' Discharge and Debtors Robert Alyn Rael and Lisa Lynn Rael's Answer. At the hearing's conclusion, the court took the matter under advisement. Having reviewed the record, testimony and documentary evidence, the court is prepared to rule.

**Jurisdiction**

This court has jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(J). Venue is proper under 28 U.S.C. § 1408. The matter is before the court pursuant to 11 U.S.C. § 727(a)(6)(A) and Fed. R. Bankr. P. 4004.

**Background**

The Raels filed their voluntary chapter 11 bankruptcy petition on May 1, 2008, retaining Stephen Winship, Esq. as their attorney. At the time of filing, the Raels were sole shareholders

and members of Professional Contractors, Inc. and Lovell's American Car Care Center, LLC as well as these entities' officers. These businesses failed in 2011, and no longer operate.[1]

This court confirmed the Raels' Amended Chapter 11 Plan of Reorganization on January 20, 2010, and granted a final decree on March 7, 2011. The plan created Class One – Wells Fargo Bank and called for this claim to be partially satisfied through the sale of three parcels:

> ***Class One-Wells Fargo Bank***. This creditor holds security interests against Raels' real estate and some equipment and vehicles used in their businesses. This claim, which is disputed, is for $1,176,262.00 and is secured by assets having a value of $502,261.00. This creditor's claim will be partially satisfied by the sale of the following parcels of real property:
>
> | | |
> |---|---|
> | 520 Oregon Trail and Fifth Street (car wash)<br>Lovell, Wyoming | $36,431.00 |
> | 51 East Main Street<br>Lovell, Wyoming | $48,208.00 |
> | 330 South 1st West Street<br>Cowley, Wyoming | $36,817.00 |
>
> In the event any of the parcels are not sold within one year of the effective date of the Plan, such unsold parcels will be surrendered by quit claim deed to Wells Fargo and the secured claim of the creditor will be reduced by the values indicated above.[2]

Additionally, Raels were to make monthly payments to Wells Fargo.

With respect to the IRS's claim, the Plan provides:

> ***Class Three-IRS***. This creditor has a claim for $69,544.00, which represents a penalty assessment under 26 U.S.C. § 6672 arising from PCI payroll tax liability. This amount will be satisfied by PCI's plan payments since this is an overlapping obligation.[3]

---

[1] Professional Contractors, Inc. (Wyo. Bankr. Case No. 08-20252) and Lovell's American Car Care Center, LLC (Wyo. Bankr. Case No. 08-20128) were related Chapter 11 business bankruptcy cases to Debtors' individual Chapter 11 case.
[2] Case No. 08-20251, ECF 84 at p. 2.
[3] Case No. 08-20251, ECF 184 at p. 3.

Raels subsequently defaulted on the Wells Fargo payments. Wells Fargo filed complaints in the Fifth Judicial District for the State of Wyoming and obtained default judgments on amounts Raels owed to the Bank's for pre-petition mortgages. Wells Fargo filed the complaints without having first obtained relief from the automatic stay. Wells Fargo filed its judgment as a lien against the Cowley Parcel in the real estate records for Big Horn County, Wyoming.

Raels filed a Motion to Reopen Case "to allow Defendants to enforce the terms of the confirmed Plan and to bring contempt actions for violation of the Automatic Stay."[4] The Court reopened the case on June 6, 2013.

On September 16, 2013, the Raels sought permission to sell the Cowley Parcel to David and Michelle Banks. The original "Motion for Approval of Sale of Real Property" asserted that the Parcel was "subject to a mortgage held by Wells Fargo Bank . . . the sale proceeds will be paid to the mortgagor, Wells Fargo Bank." The Sale Order stated in pertinent part that "…the proceeds thereof shall be paid in accordance with Debtors' Motion." Raels made several subsequent modifications to the sale motion to address various title insurance company requirements and to adjust the sales price, but did not modify the allocation of the proceeds. No party opposed the sale motions, and this court entered Orders approving these sale motions.

Thereafter, Raels filed their first motion for order to show cause and/or contempt citation against Wells Fargo. The court held an evidentiary hearing and denied the motion. It ruled that the stay terminated upon the case closure and that there was no discharge injunction because the Raels had not completed the plan payments.[5] The court also ruled that it did not have "related to" jurisdiction over the Bank's action to enforce its liens.[6] "When property leaves the bankruptcy

---

[4] Case No. 08-20251, ECF 239.
[5] Case No. 08-20251, ECF 322 at pp. 5-6.
[6] *Id.* at 11.

estate, however, the *bankruptcy court's jurisdiction proceeding [sic] comes to an end*."[7]  Raels filed their second motion for order to show cause and/or contempt citation against Wells Fargo, which this court also denied.

The Tenth Circuit Bankruptcy Appellate Panel affirmed the denial of relief:

Applying the concurring opinion from *Houlik* further reiterates that the bankruptcy court is not left without jurisdiction entirely. Instead, exclusive bankruptcy court jurisdiction did not arise based on those particular facts—facts that are nearly identical to those found here. As a result, the Raels' arguments also fail as to this portion of the bankruptcy court's orders.[8]

While the appeal was pending, Raels proceeded with the sale transaction. The buyers originally made a $5,000.00 down payment, which Counsel deposited in his trust account. On April 4, 2014, the closing occurred on the Parcel's sale to David and Michelle Banks for a sales price of $130,000.00. Raels received a total of $127,283.81 at closing in the form of a check from the title insurance company and retention of the $5000.00 down payment.

Neither the Raels nor Counsel turned the sale proceeds over to Wells Fargo. Instead, Raels, held the check for nearly a year, eventually depositing it into a bank account opened at the Bank of Greybull on March 10, 2015. Based upon the documentary evidence, Counsel and the Raels began discussing the disbursement of the Sale proceeds in a letter dated March 11, 2015.[9] The bank placed the funds on a 10-day hold upon being deposited, due to the large amount. Counsel and the Raels communicated numerous times from the day the Raels deposited the check before converting their case to a Chapter 7. On March 19, 2015, Counsel sent Raels a letter suggesting that Raels obtain cashier's checks payable to the IRS for $95,584.00; $4,250.00 to pay Raels' accountants; and $22,439.72 to Mr. Winship for unpaid fees and services.[10]

---

[7] *Id.* at 9 (*citing In re Houlik*, 481 B.R. 661, 674 (B.A.P. 10th Cir.) (emphasis added)).
[8] *In re Rael*, 527 B.R. 799, at 8 (B.A.P. 10th Cir. 2015).
[9] UST Ex. No. 9, at 112.
[10] UST Ex. No. 9 at 121.

Raels converted their bankruptcy case to a Chapter 7 on May 4, 2015. The Chapter 7 § 341 Meeting of Creditors was scheduled and held on May 25, 2015. Mr. Tom Klepperick, counsel for Wells Fargo, attended the Meeting of Creditors to determine the status of the sale of the Property.[11] In spite of a request to Raels' counsel, the Meeting of Creditors was the first time Mr. Klepperick was made aware the parcel was sold and to whom the proceeds were distributed. On June 25, 2015, the U. S. Trustee filed the Complaint commencing Adversary Proceeding 15-2013.

**Analysis**

The U.S. Trustee seeks to deny the Raels' discharge for refusal to follow a court order.[12] In its complaint, the U.S. Trustee alleges that Raels failed to comply with the Sales Order when they failed to distribute any proceeds to Wells Fargo. Raels' Answer that they relied upon their Counsel's advice, which affected their ability to form the requisite intent.

1. General standard for revoking/objecting to discharge

In weighing the facts put forward in a contest over a discharge, the court must bear in mind the beneficial policy of allowing honest debtors to receive a fresh start in life.[13] The Bankruptcy Code serves to relieve the honest debtor from the weight of oppressive indebtedness, and permit the debtor to start afresh, free from the obligations and responsibilities consequent upon misfortunes.[14] Jurisprudence is unequivocal that courts construe objections to discharge liberally in favor of a debtor and strictly against creditors in order to further the Code's fresh start policy.[15] Totally barring discharge is an extreme penalty.[16]

---

[11] Mr. Klepperick was Wells Fargo's counsel until his retirement.
[12] § 727(a)(6)(A).
[13] *Grogan v. Garner*, 498 U.S. 279, 283 (1991); *In re Brown*, 108 F.3d 1290, 1294 (10th Cir. 1997); *In re Christensen*, 561 B.R. 195, 215-16 (Bankr. D. Utah 2016).
[14] *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934).
[15] *In re Butler*, 377 B.R. 895, 915 (Bankr. D. Utah 2006).
[16] *Id.*

2. <u>Section § 727(a)(6)(A)</u>

Under § 727(a)(6)(A), the Trustee must establish that Debtors received the order in question and failed to comply with its terms.[17] As movant, the U.S. Trustee has the burden to prove the grounds for denial of discharge by a preponderance of the evidence.[18] Debtors then bear the burden of explaining the non-compliance.[19] The court may only deny discharge under § 727(a)(6)(A) if it finds that a debtor's non-compliance was willful, "refusal, as opposed to simple failure, requires intent."[20] Failure to comply because of inability, mistake, or inadvertence is insufficient.[21] Where grounds for denying discharge are present, § 727(a) nonetheless vests this court with the discretion to grant a discharge.[22]

3. <u>Advice of counsel as defense</u>

Debtors argue they did not have the requisite intent as they relied upon counsel's advice. To establish an advice of counsel defense, Debtors must present evidence, which satisfies the following elements:

(1) that all facts were fully and fairly communicated to counsel;
(2) that counsel gave legal advice;
(3) that debtors relied on the legal advice; and
(4) that debtors' reliance was in good faith.[23]

Raels relied on Mr. Winship's legal interpretation about the validity of the court order. Counsel was not only fully informed as to all relevant facts, he best understood the consequences of bankruptcy law. Thereafter, Debtors sought guidance from Mr. Winship on the distribution of the sale proceeds. In a letter dated February 19, 2015, Mr. Winship informed the Raels:

---

[17] *In re Osborne*, 476 B.R. 284, 296 (Bankr. D. Kan. 2012).
[18] *In re Garland*, 417 B.R. 805, 810–11 (B.A.P. 10th Cir. 2009).
[19] *In re Osborne*, 476 B.R. at 296.
[20] *Id.* at 297.
[21] *Id.*
[22] *In re DiGesualdo*, 463 B.R. 503, 523 (Bankr. D. Colo. 2011).
[23] *In re Biorge*, 536 B.R. 24, 30 (Bankr. D. Utah 2015).

> [I]f the Bankruptcy Appellate Panel affirms the Bankruptcy Court ruling, it means that the proceeds from the sale to the Banks is not subject to Bankruptcy Court jurisdiction thereby allowing that money to then be applied in large part to the non-dischargeable IRS obligation.[24]

Subsequently, as stated above, Counsel advised the Raels disburse the Sale Proceeds to the IRS, the Rael's accountants, and himself.

Debtors testified that they relied on Counsel's advice. In this instance, a number of events combined to cause Counsel to question the Sales Order's legitimacy. In its first contempt order, the court found that its jurisdiction over property that leaves the bankruptcy estate "comes to an end." The Bankruptcy Appellate Panel found that the property pledged to Wells Fargo "was not estate property."[25] When combined with Counsel's advice, it was not unreasonable for Debtors to have faith in Mr. Winship or have any reason to believe he was in error.

It is rare that there will not be consequences for failure to obey a court order. All parties should err on the side of clarification as opposed to disregarding. The U.S. Trustee met its burden showing Debtors failed to comply with a court order. But upon the burden shift, Debtors established their actions were not willful as they reasonably relied on Counsel's advice. Revoking Debtors' discharge is not appropriate given the principal that courts should narrowly construe the exceptions to the general policy favoring discharge.

4. Mutual mistake

Debtors further challenge the U.S Trustee's request to deny discharge by asserting there was a mutual mistake at the time the parties and the court moved forward on the Sale Order. Debtors contend the parties were mutually mistaken about the existence of a mortgage on the property. Counsel for Wells Fargo, Mr. Klepperick, testified he advised Mr. Winship that Wells

---

[24] UST Ex. No. 9 at 107.
[25] *In re Rael,* 527 B.R. 799 at *5 (B.A.P. 10th Cir. 2015).

Fargo had a judgment lien, not a mortgage and "was surprised [to] seeing the wording" in the Sale Motion as Mr. Winship continually confused the judgment lien as a mortgage. Debtors' petition and schedules indicate the property was encumbered.[26] Regardless of the phrasing of Wells Fargo's interest as a mortgage or judgment lien, it was the Raels' intent to turn the sales proceeds over to Wells Fargo. There was no mutual mistake.

**Conclusion**

In conclusion, as discussed above, the court finds the U.S. Trustee met its burden showing the Raels failed to comply with the court's Order. However, as the burden shifted, the Raels established their actions were not willful as they reasonably relied upon Mr. Winship's advice. Therefore, the court finds for Defendants, Mr. and Mrs. Rael and against the U.S. Trustee, determining Debtors' discharge shall be entered.

This opinion constitutes the court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

BY THE COURT

*Cathleen D. Parker*

6/12/2017

Honorable Cathleen D. Parker
United States Bankruptcy Judge

Service to:
  Daniel Morse
  Stephen Winship

---

[26] Case No. 08-20251, ECF 20, Schedules A and D.