IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| In re ) | | |
| ) | | |
| ROBERT ALYN RAEL ) | Case No. 08-20251 | |
| LISA LYNN RAEL ) | Chapter 7 | |
| ) | | |
| Debtors. ) | | |
| ) | | |
| UNITED STATES TRUSTEE ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | Adv. No. 15-2013 | |
| ) | | |
| ROBERT ALYN RAEL ) | | |
| LISA LYNN RAEL ) | | |
| ) | | |
| Defendants. ) | | |

FILED

4:33 pm, 9/14/17

Tim J. Ellis
Clerk of Court

## **AMENDED OPINION**

This adversary proceeding came before the court for an evidentiary hearing on February 21, 2017, on the United States Trustee's Complaint to Deny Debtors' Discharge and Debtors Robert Alyn Rael and Lisa Lynn Rael's Answer. At the conclusion of the evidentiary hearing the court took the matter under advisement. Having reviewed the record, testimony and documentary evidence, the court is prepared to rule.

**Jurisdiction**

This court has jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(J). Venue is proper under 28 U.S.C. § 1408. The matter is before the court pursuant to 11 U.S.C. § 727(a)(6)(A) and Fed. R. Bankr. P. 4004.

**Background**

The Raels filed their voluntary chapter 11 bankruptcy petition on May 1, 2008, retaining Stephen Winship, Esq. as their attorney. At the time of filing, the Raels were sole shareholders

and members of Professional Contractors, Inc. (PC) and Lovell's American Car Care Center, LLC (LACC) as well as serving as these entities' officers. These businesses failed in 2011, and no longer operate.[1]

This court confirmed the Raels' Amended Chapter 11 Plan of Reorganization on January 20, 2010, and granted a final decree on March 7, 2011. The plan created Class One – Wells Fargo Bank. The Plan called for this claim to be partially satisfied through the sale of three parcels:

> ***Class One-Wells Fargo Bank***. This creditor holds security interests against Raels' real estate and some equipment and vehicles used in their businesses. This claim, which is disputed, is for $1,176,262.00 and is secured by assets having a value of $502,261.00. This creditor's claim will be partially satisfied by the sale of the following parcels of real property:
>
> | | |
> |---|---|
> | 520 Oregon Trail and Fifth Street (car wash)<br>Lovell, Wyoming | $36,431.00 |
> | 51 East Main Street<br>Lovell, Wyoming | $48,208.00 |
> | 330 South 1st West Street<br>Cowley, Wyoming | $36,817.00 |
>
> In the event any of the parcels are not sold within one year of the effective date of the Plan, such unsold parcels will be surrendered by quit claim deed to Wells Fargo and the secured claim of the creditor will be reduced by the values indicated above.[2]

Additionally, Raels were to make monthly payments to Wells Fargo. With respect to the IRS's claim, the Plan provides:

---

[1] Professional Contractors, Inc. (Wyo. Bankr. Case No. 08-20252) and Lovell's American Car Care Center, LLC (Wyo. Bankr. Case No. 08-20128) were related Chapter 11 business bankruptcy cases to Debtors' individual Chapter 11 case.
[2] Case No. 08-20251, ECF 84 at p. 2.

> ***Class Three-IRS***. This creditor has a claim for $69,544.00, which represents a penalty assessment under 26 U.S.C. § 6672 arising from PCI payroll tax liability. This amount will be satisfied by PCI's plan payments since this is an overlapping obligation.[3]

Raels subsequently defaulted on the payments to Wells Fargo. Wells Fargo filed complaints in the Fifth Judicial District for the State of Wyoming and obtained judgments on amounts Raels owed on the Bank's pre-petition mortgages. Wells Fargo filed the complaints without having first obtained relief from the automatic stay and obtained a default judgment. Wells Fargo filed its judgment as a lien against the Cowley Parcel in the real estate records for Big Horn County, Wyoming.

Raels filed a Motion to Reopen Case "to allow Defendants to enforce the terms of the confirmed Plan and to bring contempt actions for violation of the Automatic Stay."[4] The Court reopened the case on June 6, 2013.

On September 16, 2013, the Raels sought permission to sell the Cowley Parcel to David and Michelle Banks. The original "Motion for Approval of Sale of Real Property" asserted that the Parcel was "subject to a mortgage held by Wells Fargo Bank . . . the sale proceeds will be paid to the mortgagor, Wells Fargo Bank." The Sale Order stated in pertinent part that "…the proceeds thereof shall be paid in accordance with Debtors' Motion." Raels made several subsequent modifications to the sale motion to address various title insurance company requirements and to adjust the sales price, but did not modify the allocation of the proceeds. No party opposed the sale motions, and this court entered Orders approving these sale motions.

Thereafter, Raels filed their first motion for order to show cause and/or contempt citation against Wells Fargo. The court held an evidentiary hearing and denied the motion. It ruled that

---

[3] Case No. 08-20251, ECF 184 at p. 3.
[4] ECF 239.

the stay terminated upon the case closure and that there was no discharge injunction because the Raels had not completed the plan payments. The court also ruled that it did not have "related to" jurisdiction over the Bank's action to enforce its liens.[5] "When property leaves the bankruptcy estate, however, the *bankruptcy court's jurisdiction proceeding [sic] comes to an end*."[6]

Raels filed their second motion for order to show cause and/or contempt citation against Wells Fargo which this Court also denied. The Tenth Circuit Bankruptcy Appellate Panel affirmed the denial of relief:

> Applying the concurring opinion from *Houlik* further reiterates that the bankruptcy court is not left without jurisdiction entirely. Instead, exclusive bankruptcy court jurisdiction did not arise based on those particular facts—facts that are nearly identical to those found here. As a result, the Raels' arguments also fail as to this portion of the bankruptcy court's orders.[7]

While the appeal was pending, Raels proceeded with the sale transaction. David and Michelle Banks originally made a $5,000.00 down payment, which Counsel deposited in his trust account. On April 4, 2014, the closing occurred on the sale of the Parcel to David and Michelle Banks for a sales price of $130,000.00. Raels received a total of $127,283.81 at closing, i.e., $122,283.81 in the form of a check from the title insurance company conducting the closing and the retention of David and Michelle Banks's $5000.00 down payment.

None of the Sales Proceeds were turned over to Wells Fargo. Instead, Raels, held the check for nearly a year, eventually depositing the Sales Proceeds into a bank account opened at the Bank of Greybull on March 10, 2015. Based upon the documentary evidence, Counsel and the Raels began discussing how the Sale proceeds were going to be disbursed in a letter dated March 11, 2015.[8] The funds were placed on a 10-day hold upon being deposited, due to the large

---

[5] Case No. 08-20251, ECF No. 322, at p. 11.
[6] *Id* at 9, *citing In re Houlik*, 481 B.R. 661, 674 (B.A.P. 10th Cir.) (emphasis added).
[7] *In re Rael*, 527 B.R. 799, at 8 (B.A.P. 10th Cir. 2015).
[8] UST Ex. No. 9, at 112.

amount. Counsel and the Raels communicated numerous times from the time the check was deposited regarding disbursing the Sale Proceeds, before converting their case to a Chapter 7. On March 19, 2015, Counsel sent Raels a letter suggesting that Raels obtain cashier's checks for the IRS in the amount of $95,584.00; $4,250.00 to pay Raels' accountants; and $22,439.72 to Mr. Winship for unpaid fees and services to convert the Rael's case to a chapter 7.[9] It appears, Ms. Rael requested to use part of the Sale Proceeds for car repair. However, it appears due to the "time-crunch" in getting the Sale Proceeds check deposited and the cashier's checks mailed to the selected creditors, this did not occur.[10]

Raels converted their bankruptcy case to a Chapter 7 on May 4, 2015. The Chapter 7 § 341 Meeting of Creditors was scheduled and held on May 25, 2015. Mr. Tom Klepperick, counsel for Wells Fargo, attended the Meeting of Creditors for the purpose of discovering the status of the sale of the Property.[11] In spite of a request to Raels' counsel, the Meeting of Creditors was the first time Mr. Klepperich was notified the closing on the sale of the parcel was completed and the resulting distribution of the proceeds. On June 25, 2015, the U. S. Trustee filed the Complaint commencing Adversary Proceeding 15-2013.

**Analysis on May 4, 2015**

The U.S. Trustee seeks to deny the Raels' discharge for refusal to follow a court order.[12] In its complaint, the U.S. Trustee alleges that Raels failed to comply with the Sales Order when they distributed the proceeds to entities other than Wells Fargo. Raels' Answer asserts they relied upon advice of counsel, which affected their ability to form the requisite intent.

---

[9] UST Ex. No. 9 at 121.
[10] Although Ms. Rael testified she was told "no" regarding repair to her vehicle, the evidence reflects Counsel asked if she wanted to redo the [cashier] checks, to provide for the use of $584.00 of the proceeds on car repairs. *See* UST Ex. 9 at 138.
[11] Mr. Klepperick was Wells Fargo's counsel until his retirement.
[12] § 727(a)(6)(A).

1. <u>General standard for revoking/objecting to discharge</u>

In weighing the facts put forward in a contest over a discharge, the court must bear in mind the beneficial policy of allowing honest debtors to receive a fresh start in life.[13] The Bankruptcy Code serves to relieve the honest debtor from the weight of oppressive indebtedness, and permit the debtor to start afresh, free from the obligations and responsibilities consequent upon misfortunes.[14] Jurisprudence is unequivocal that objections to discharge are to be construed liberally in favor of a debtor and strictly against creditors in order to further the fresh start policy of the Code.[15] Totally barring discharge is an extreme penalty.[16]

2. <u>Section § 727(a)(6)(A) analysis</u>

Under, § 727(a)(6)(A), the Trustee must establish that Debtors received the order in question and failed to comply with its terms.[17] As movant, the U.S. Trustee has the burden to prove the grounds for denial of discharge by a preponderance of the evidence.[18] Debtor then bears the burden of explaining the non-compliance.[19] The court may only deny discharge under § 727(a)(6)(A) if it finds that Debtor's non-compliance was willful."[20] "[R]efusal, as opposed to simple failure, requires intent."[21] Failure to comply because of inability, mistake, or inadvertence is insufficient.[22] Where grounds for denying discharge are present, § 727(a) nonetheless vests this court with the discretion to grant a discharge.[23]

---

[13] *Grogan v. Garner*, 498 U.S. 279, 283 (1991); *In re Brown*, 108 F.3d 1290, 1294 (10th Cir. 1997); *In re Christensen*, 561 B.R. 195, 215-16 (Bankr. D. Utah 2016).
[14] *Local Loan Co. v. Hunt*, 54 S.Ct. 695, 699 (1934).
[15] *In re Butler*, 377 B.R. 895, 915 (Bankr. D. Utah 2006).
[16] *Id.*
[17] *In re Osborne*, 476 B.R. 284, 296 (Bankr. D. Kan. 2012).
[18] *In re Garland*, 417 B.R. 805, 810–11 (B.A.P. 10th Cir. 2009).
[19] *In re Osborne*, 476 B.R. at 296.
[20] *Id.* at 297.
[21] *Id.*
[22] *Id.*
[23] *In re DiGesualdo*, 463 B.R. 503, 523 (Bankr. D. Colo. 2011).

3. <u>Advice of counsel as defense</u>

Debtors argue they did not have the requisite intent as they relied upon the advice of counsel. To establish an advice of counsel defense, Debtors must present evidence, which satisfies the following elements:

(1) that all facts were fully and fairly communicated to counsel;
(2) that counsel gave legal advice;
(3) that debtors relied on the legal advice; and
(4) that debtors' reliance was in good faith.[24]

Raels relied on advice about the validity of a court order based on Mr. Winship's legal interpretation. Counsel was not only fully informed as to all relevant facts, he better understood the consequences of bankruptcy law. Thereafter, Debtors sought guidance from Mr. Winship on the distribution of the sale proceeds. In a letter dated February 19, 2015, Mr. Winship informed the Raels that "if the Bankruptcy Appellate Panel affirms the Bankruptcy Court ruling, it means that the proceeds from the sale to the Banks is not subject to Bankruptcy Court jurisdiction thereby allowing that money to then be applied in large part to the non-dischargeable IRS obligation."[25] Subsequently, as stated above, Counsel suggested the disbursement of the Sale Proceeds to the IRS, the Rael's accountants and himself.

Debtors testified that they relied on counsel's advice. In this instance, a number of events combined to call into question the legitimacy of the order. In its first contempt order, the court found that its jurisdiction over property that leaves the bankruptcy estate "comes to an end." The Bankruptcy Appellate Panel found that the property pledged to Wells Fargo "was not estate

---

[24] *In re Biorge*, 536 B.R. 24, 30 (Bankr. D. Utah 2015).
[25] UST Ex. No. 9 at 107.

property."[26] When combined with advice from counsel, it was not unreasonable for Debtors to have faith in Mr. Winship or have any reason to believe he was in error.

It is rare that there will not be consequences for failure to obey a court order. All parties should error on the side of clarification as opposed to disregarding. The U.S. Trustee met its burden showing Debtors failed to comply with a court order. But upon the burden shift, Debtors established their actions were not willful as they reasonably relied on the advice of counsel. Revocation of discharge is not appropriate given the principal that the exceptions to the general policy favoring discharge be narrowly construed.

4. Mutual mistake

Debtors further challenge the U.S Trustee's request to deny discharge by asserting there was a mutual mistake at the time the parties and the court moved forward on the Sale Order. Debtors contend the parties were mutually mistaken about the existence of a mortgage on the property. Counsel for Wells Fargo, Mr. Klepperick, testified he discussed with Mr. Winship, that Wells' Fargo had a judgment lien, not a mortgage and "was surprised [to] seeing the wording" in the Sale Motion as Mr. Winship continually confused the judgment lien as a mortgage. Debtors' petition and schedules indicate the property was encumbered.[27] Regardless of the phrasing of the Motion of Wells Fargo's interest as a mortgage or judgment lien, it was the Raels' intent to turn the sales proceeds over to Wells Fargo. There was no mutual mistake.

**Conclusion**

In conclusion, as discussed above, the court finds the U.S. Trustee met its burden showing the Raels failed to comply with the court's Order. However, as the burden shifted, the Raels established their actions were not willful as they reasonably relied upon the advice of Mr.

---

[26] *In re Rael,* 527 B.R. 799 at * 5 (B.A.P. 10th Cir.).
[27] Case No. 08-20251, ECF 20, Schedules A and D.

Winship. Therefore, the court finds for Defendants, Mr. and Mrs. Rael and against the U.S. Trustee, determining Debtors' discharge shall be entered.

This opinion constitutes the court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

BY THE COURT

*Cathleen D. Parker*  9/14/2017
_____
Honorable Cathleen D. Parker
United States Bankruptcy Judge

Service to:
    Daniel Morse
    Stephen Winship